## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INNOVATIVE THERAPIES, INC.,                )
                                           )
      Plaintiff,                          )
                                           )
v.                                         )     Civil Action No. 07-589-SLR
                                           )
KINETIC CONCEPTS, INC., KCI LICENSING,     )
INC., and KCI USA, INC.,                   )
                                           )
      Defendants.                         )

## OPENING BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS FIRST AMENDED COMPLAINT,
## OR, ALTERNATIVELY, TO TRANSFER THE CASE
## TO THE MIDDLE DISTRICT OF NORTH CAROLINA

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Donald R. Dunner
Don O. Burley
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001
202-408-4000

{00201743;v1}6215153 v1

Erik R. Puknys
Jason M. Webster
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA  94304
650-849-6600

R. Laurence Macon
Karen Kroesche Gulde
AKIN GUMP STRAUSS HAUER
   & FELD LLP
300 Convent Street, Suite 1500
San Antonio, TX  78205
210-281-7000

Dated: March 12, 2008

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS .......................................................................................2

    A.    The Parties and Products at Issue.................................................................2

    B.    Circumstances Surrounding the Filing of ITI's Lawsuit ..............................3

          1.    Events Preceding the Filing of ITI's Original Complaint............................3

          2.    Developments After Suit Was Filed .............................................................5

III.  ARGUMENT ...........................................................................................................7

    A.    This Suit Must be Dismissed because the Court Lacked Jurisdiction at the
        Time Suit was Filed .....................................................................................7

          1.    Declaratory-Judgment Jurisdiction Requires a Definite and
               Concrete Dispute Between the Parties..........................................................8

          2.    ITI's Pre-Suit Phone Calls Made Under False Pretenses Did Not
               Create Declaratory Judgment Jurisdiction...................................................8

          3.    The Existence of a Dispute Between ITI and KCI Is Not Shown By
               Either KCI's Suits Against Other Parties or KCI's General
               Statements About the Importance of Its Intellectual Property...................12

               a.    KCI's Lawsuits Against Other Parties...........................................12

               b.    KCI's Statement in Its SEC Form 10-K That Its
                     Intellectual Property Is Important ...................................................13

          4.    Events Subsequent to the Filing of the Original Complaint Cannot
               Create Jurisdiction .....................................................................................15

    B.    Even If This Court Were to Find Jurisdiction, the Court Should Exercise
        Its Discretion and Decline to Hear the Case ...........................................16

    C.    In the Alternative, This Court Should Transfer Venue of This Suit to the
         Middle District of North Carolina Pursuant to 28 U.S.C. § 1404(a) ....................20

    D.    In the Further Alternative, the Court Should Dismiss or Stay ITI's Newly
        Added Declaratory Judgment Count That Mirrors KCI's Pending Texas
        Suit ............................................................................................................22

**TABLE OF CONTENTS**

**Page**

IV.    CONCLUSION.....................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adenta GmbH v. OrthoArm, Inc.,*
    510 F.3d 1364 (Fed. Cir. 2007)...................................................................... 11

*Alloc, Inc. v. Unilin Decor NV,*
    No. 03-253GMS, 2006 WL 3050815 (D. Del. Oct. 26, 2006) ......................... 19

*Apotex Inc. v. Sanofi-Synthelabo,*
    386 F. Supp. 2d 549 (S.D. N.Y. 2005)......................................................... 22, 23

*APV North Am., Inc. v. Sig Simonazzi North America, Inc.,*
    295 F. Supp.2d 393 (D. Del. 2002).............................................................. 19, 20

*Baker Hughes Oilfield Operations, Inc. v. ReedHycalog UK, Ltd.,*
    No. 2:05-CV-931 TS, 2008 WL 345849 (D. Ut. Feb. 6, 2008)................... 10, 15

*Boler Co. v. Raydan Mfg., Inc.,*
    415 F. Supp. 2d 896 (N.D. Ill. 2006) ............................................................... 9

*Bosco v. Scott,*
    No. 00-211-GMS, 2000 WL 1728150 (D. Del. Aug. 31, 2000) ....................... 20

*Bridgelux, Inc. v. Cree, Inc.,*
    No. C 06-6495 PJH, 2007 WL 2022024 (N.D. Cal. July 9, 2007) ................... 14

*Brown ex rel. FoxMeyer Drug Co. v. C.D. Smith Drug Co.,*
    No. 98-494-SLR, 1999 WL 709992 (D. Del. Aug. 18, 1999) ......................... 18

*EEOC v. Univ. of Pennsylvania,*
    850 F.2d 969 (3rd Cir. 1988) ....................................................................... 21

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996)............................................................... 16, 17, 22

*Eolica, S.A. v. General Elec. Co.,*
    No. 04-C-43-C, 2004 WL 1196870  (W.D. Wis. May 18, 2004) ..................... 14

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.,*
    746 F.2d 323 (6th Cir. 1984) ...................................................................... 22

*Indium Corp. v. Semi-Alloys, Inc.,*
    781 F.2d 879 (Fed. Cir. 1985)......................................................................... 8

## TABLE OF AUTHORITIES

*Int'l Harvester Co. v. Deere & Co.*,
   623 F.2d 1207 (7th Cir. 1980) ................................................................. 13

*Integral Resources (PVT) Ltd. v. Istil Group, Inc.*,
   No. 03-904, 2004 WL 2758672 (D. Del. Dec. 2, 2004) ................................ 21

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3rd Cir. 1995) ..................................................................... 18

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007) ......................................................................... passim

*Merchandising Tech., Inc. v. Telefonix, Inc.*,
   No. 05-CV-1195-BR, 2007 WL 464710 (D. Or. Feb. 7, 2007) ....................... 10

*Micron Tech. Inc. v. Mosaid Tech. Inc.*,
   No. 2007-1080, 2008 WL 540182 (Fed. Cir. Feb. 29, 2008) ................... passim

*Omnicom Group, Inc. v. Employers Reinsurance Corp.*,
   No. 01-839-GMS, 2002 WL 109346 (D. Del. Jan. 28, 2002) ......................... 19

*Pressroom Unions-Printers League Income Security Fund v. Continental Assur. Co.*,
   700 F.2d 889 (2nd Cir. 1983) .................................................................. 15

*SanDisk Corp. v. STMicroeletrocnics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ........................................................... 10, 11

*Schering Corp. v. Amgen, Inc.*,
   969 F. Supp. 258 (D. Del. 1997) ............................................................. 15

*Serco Servs. Co. v. Kelley Co.*,
   51 F.3d 1037 (Fed. Cir. 1995) ................................................................ 17

*Shell Oil Co. v. Amoco Corp.*,
   970 F.2d 885 (Fed. Cir. 1992) ................................................................ 10

*Sony Elect., Inc., v. Guardian Media Tech., Ltd.*,
   497 F.3d 1271 (Fed. Cir. 2007) ........................................................... 11, 16

*Staley Elevator Co. v. Otis Elevator Co.*,
   35 F. Supp. 778 (D.N.J. 1940) ............................................................... 23

*Travelers Ins. Co. v. Davis*,
   490 F.2d 536 (3rd Cir. 1974) ................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

*Weisler v. Barrows*,
    No. 06-362, 2006 WL 3201882 (D. Del. Nov. 6, 2006).....................................................19

*West Interactive Corp. v. First Data Resources*,
    972 F.2d 1295 (Fed. Cir. 1992).....................................................................................13

*Wilton* v. *Seven Falls Co.*,
    515 U.S. 277 (1995).................................................................................................16, 23

## **STATUTES**

21 U.S.C. § 2201 .............................................................................................................8

28 U.S.C. § 1404(a) ..................................................................................................passim

## **REGULATIONS**

17 C.F.R. § 229.503(c).....................................................................................................13

## I.    PRELIMINARY STATEMENT

Plaintiff ("ITI") filed this anticipatory declaratory judgment suit before Defendants ("KCI") even had the opportunity to see ITI's product, much less study it sufficiently to make a determination whether that product might infringe any KCI patent.  If the Declaratory Judgment Act's actual controversy requirement has any meaning at all, a party must not be able to invoke the Act to ambush a potential adversary before that party even knows it may have reason to be adverse.  Yet that is exactly what ITI is attempting to do here.

No dispute that would give rise to declaratory-judgment jurisdiction existed between ITI and KCI at the time ITI filed suit, and ITI's first unilateral attempt to manufacture such jurisdiction through phone calls made to KCI's employees under false pretenses days before the suit was filed was legally insufficient.  After KCI filed a motion to dismiss raising the jurisdictional defects (D.I. 8), and after that motion was fully briefed and set for hearing, ITI made a second attempt to establish jurisdiction through its 11th-hour filing of an amended complaint, necessitating this second motion and postponement of the hearing previously scheduled to resolve the question of jurisdiction.  However, ITI cannot retroactively create jurisdiction in Delaware on the basis of events that occurred after ITI filed this suit.  Further, those events only demonstrate that jurisdiction never existed in the first place.

Even *if* the Court were to find that jurisdiction exists here, it should exercise its discretion under the Declaratory Judgment Act to decline to hear ITI's claims and dismiss this matter.  ITI's tactics, which smack of procedural gamesmanship and have caused the Court and KCI to waste valuable resources, run afoul of the purpose of the Declaratory Judgment Act.  Also, under very recent Federal Circuit precedent, the Court should decline to exercise jurisdiction because

ITI's claims can be better resolved in the suit now pending between the parties in the Middle District of North Carolina, where key witnesses and documents are located.

In the alternative, the Court should transfer this case to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a), because doing so would be more convenient for the parties and better serve the interests of justice. In the further alternative, the Court should dismiss or stay ITI's newly added declaratory judgment count that mirrors pending claims in a Texas state court action.

## II.   STATEMENT OF FACTS

### A.   The Parties and Products at Issue

KCI, headquartered in San Antonio, Texas, is a leader in the development, manufacture and distribution of specialty therapeutic medical devices. First Amended Complaint (D.I. 36), Ex. H ¶¶ 2-4, 9. Since 1995, KCI's product line has included the V.A.C.® therapy system (hereinafter "VAC"), which has dramatically revolutionized wound care by providing effective treatment for difficult-to-treat and chronic wounds. *Id.* at ¶¶ 10-11. The VAC incorporates novel features and characteristics invented by researchers working at Wake Forest University Health Sciences ("Wake Forest") in Winston-Salem, North Carolina. *Id.* at ¶ 12. In recognition of the technological advances made by these researchers, the U.S. Patent and Trademark Office issued a number of patents that are assigned to Wake Forest and exclusively licensed to KCI. *Id.* at ¶¶ 12-16.

ITI was founded in 2006 by "one former officer and various employees of KCI" and Dr. Paul Svedman. *Id.* at ¶ 15. The former KCI employees now working at ITI include David M. Tumey, who managed the development of KCI's VAC product line for at least five of

his eight years at KCI.   Declaration of David Tumey (D.I. 21) ("Tumey Decl.") ¶¶ 2-3.[1]

Mr. Tumey now serves as "Chief Technology Officer" of ITI.   *Id.* at ¶ 1.   On or about October 1,

2007, ITI decided to begin offering for sale a "new and improved" device it calls the "Svedman

Wound Treatment System" ("Svedman System").   First Amended Complaint ¶¶ 16, 22.   ITI

alleges that its Svedman System competes with KCI's VAC.   *Id.* at 16.   *Before* it began offering

the Svedman System for sale, ITI filed its original complaint on September 25, 2007, seeking a

declaration from this Court that five patents owned by or licensed to KCI are invalid and not

infringed by the Svedman System.   Complaint (D.I. 1) at Counts 1-10.

**B.      Circumstances Surrounding the Filing of ITI's Lawsuit**

      **1.      Events Preceding the Filing of ITI's Original Complaint**

      Prior to launching its Svedman system, ITI apparently decided to file a preemptive suit

against KCI even though KCI had never even seen ITI's new product.   Declaration of Don

Burley (D.I. 12) ("Burley Decl."), at ¶ 4.   But ITI had a problem—it had no evidence of an actual

dispute with KCI that would give rise to declaratory-judgment jurisdiction.[2]   So 13 days before

ITI filed suit, Mr. Tumey set out to attempt to manufacture evidence of a dispute by placing

phone calls to two of his former KCI co-workers under the guise of friendship and then posing

hypothetical questions to them about a product they knew nothing about.   When Mr. Tumey

placed these calls, he said nothing to either person about the fact that ITI was intending to sue

---

    [1] All of the declarations relied on in this motion were filed in connection with either KCI's motion to dismiss or ITI's original complaint or ITI's response.

    [2] It is undisputed that at the time ITI filed this suit, there had been no written communication between ITI and KCI concerning KCI's patents or ITI's Svedman System.

KCI and that his real purpose in calling was to fish for a sound-bite in order to manufacture a jurisdictional basis for ITI's suit.[3]

Mr. Tumey first tried to call his former colleague, KCI Director of Marketing Michael Girouard, at home. Declaration of Michael Girouard (D.I. 11) ("Girouard Decl.") ¶ 5. When Mr. Girouard did not return his call, Mr. Tumey left a message with Mr. Girouard's assistant at work, saying "friends call friends back." *Id.* at ¶ 6. Mr. Girouard returned Mr. Tumey's call from his cell phone while he was driving on September 12, 2008. *Id.* at ¶ 7. According to Mr. Tumey, the call lasted 14 minutes, and he and Mr. Girouard spent the first "several minutes" "catching up." Tumey Decl. at ¶ 8. Mr. Tumey then gave Mr. Girouard a general description of the product ITI planned to launch, and "asked Mr. Girouard how he thought KCI might react." *Id.* at ¶ 12. According to Mr. Tumey, Mr. Girouard responded that "KCI will act aggressively" and, when asked specifically whether KCI would sue ITI, stated that KCI would take legal action *if* KCI determined that ITI's product infringed KCI's patents. *Id.* at ¶¶ 12-13. But Mr. Girouard remembers qualifying his statements by telling Mr. Tumey that he did not know whether KCI would ultimately take any action regarding his product, that this would not be his determination in any event, and also that Mr. Tumey was more knowledgeable about KCI's patents than he was.[4] Girouard Decl. at ¶ 10. Mr. Girouard also says that he never represented that he had the authority to make the decision to file a lawsuit on KCI's behalf, or to speak for KCI regarding

---

[3] The circumstances surrounding these calls demonstrate that they were carefully orchestrated to manufacture evidence for ITI's soon-to-be filed lawsuit. Mr. Tumey even went so far as to have another ITI employee, Mark Meents (also previously employed by KCI), on the phone line when he spoke to Mr. Girouard, and both Mr. Tumey and Mr. Meentz took notes during that conversation (Mr. Tumey also took notes of his conversation with Mr. Burke). Tumey Decl. at 14, Exs. C-E; Declaration of Mark Meents (D.I. 20) ("Meents Decl.") ¶ 9, Ex. A.

[4] Mr. Tumey does not recall Mr. Girouard making these statements, but does not deny that they were made. Tumey Decl. at ¶ 14.

whether such a decision would be made, and in fact, Mr. Girouard had no such authority. *Id.* at ¶¶ 3, 10.

Mr. Tumey reached Michael Burke, his former supervisor at KCI, on Mr. Burke's cell phone on September 17, eight days before ITI's lawsuit was filed and 13 days before Mr. Burke's retirement from KCI as Senior Vice President of Manufacturing. Declaration of Michael Burke (D.I. 10) ("Burke Decl.") ¶ 6. Mr. Tumey began the conversation by telling Mr. Burke that he was calling to congratulate him on his upcoming retirement. *Id.* The conversation lasted 6 minutes, and the first several minutes (4-5 minutes according to Mr. Burke) were spent discussing what Mr. Burke would be doing in retirement. Tumey Decl. at ¶ 8, Exs. D, E; Burke Decl. at 7. Then Mr. Tumey asked Mr. Burke for some "fatherly advice." Burke Decl. at ¶ 7. In the remaining one to two minutes of conversation, Mr. Tumey described in general terms ITI's new product, which Mr. Burke had not heard of or seen. *Id.* at ¶ 11; Tumey Decl. at ¶ 18. Mr. Tumey claims Mr. Burke told him that "the odds were 100%" that KCI would sue ITI if ITI launched the product he described. Tumey Decl. at ¶ 19. Mr. Burke denies making this statement, and says he told Mr. Tumey that he was "not in the loop" on litigation decisions and that he "was in no position to speak for KCI." [5] Burke Decl. at ¶ 8.

## 2. Developments After Suit Was Filed

On October 15, 2007, KCI filed a motion to dismiss alleging that no justiciable controversy existed between the parties at the time this suit was filed. The motion was fully briefed and set for hearing on February 7, 2008. *See* January 10, 2008 Order (D.I. 35).

---

[5] Mr. Tumey denies Mr. Burke told him he was "not in the loop," but does not deny that he already knew Mr. Burke was retiring when he called Mr. Burke. Tumey Decl. at 22.

Only after KCI's motion to dismiss was pending, ITI allowed KCI to inspect the Svedman System on December 4, 2007, and provided KCI with copies of its Instructions and Users Manual.[6] First Amended Complaint ¶ 30.  One month after that inspection, on January 2, 2008, KCI filed suit in state district court in Bexar County, Texas against ITI and three ITI employees who previously worked at KCI, including Mr. Tumey.  *Id.*, Ex. F.  In the Texas suit, KCI seeks injunctive relief and damages for breach of confidentiality agreements, misappropriation of trade secrets, and other claims.  *Id.*  KCI alleges in the Texas suit that its claims arise, in part, out of agreements its former employees executed in Texas, which are performable in Texas and governed by Texas law.  *Id.*  ITI and its employees have answered the Bexar County suit and the parties have exchanged discovery requests.[7]  On January 10, 2008, five weeks after KCI's inspection of ITI's product and receipt of ITI product literature, Wake Forest and KCI filed patent infringement claims against ITI in the Middle District of North Carolina, where Wake Forest is located and where ITI admits its device is being used.  First Amended Complaint ¶ 34, Ex. H.

On January 25, 2008, just two weeks before the scheduled hearing on KCI's motion to dismiss in this Delaware action, ITI filed its First Amended Complaint, adding numerous new factual allegations and two new causes of action.  ITI's newly added claims include (1) a false advertising claim arising out of statements KCI allegedly made at a healthcare facility located in

---

[6] ITI initially refused KCI's requests for inspection or product literature.  Burley Decl. at ¶ 6.

[7] ITI filed a Special Appearance alleging that the Texas court lacks personal jurisdiction over ITI, but the three individual defendants have not contested jurisdiction.  Defendants have all filed a motion to stay the Texas proceeding, but that motion has not been set for hearing.

the Middle District of North Carolina,[8] and (2) a new declaratory-judgment claim asking this

Court to construe agreements already at issue in the Texas suit KCI filed on January 12, 2008.

*Id.* at ¶¶ 34, 39-49, 104-06, Ex. F.  KCI's prior motion to dismiss, and the February 7, 2008

hearing thereon, were rendered moot by ITI's First Amended Complaint, and the hearing was

cancelled.

## III.   ARGUMENT

### A.   This Suit Must Be Dismissed Because the Court Lacked Jurisdiction at the Time Suit Was Filed

At the time ITI filed this suit, this Court lacked declaratory-judgment jurisdiction because

there was no "definite and concrete dispute" between the parties.  ITI's product had not been

offered for sale when suit was filed, KCI had not even seen the product, and there had been no

substantive dialogue between the parties concerning KCI's patents or ITI's product.   In an

attempt to manufacture evidence of a dispute, Mr. Tumey placed phone calls under false

pretenses to two former KCI co-workers just days before ITI's lawsuit was filed, but these

conversations do not establish the existence of a definite and concrete dispute.  Nor do KCI's

lawsuits against *other* parties and a general statement KCI made in an SEC Form 10-K regarding

its intellectual property show the existence of such a dispute in this case.  Finally, events that

occurred after this suit was filed cannot retroactively create jurisdiction, and in any event, such

events demonstrate the *lack* of a definite dispute when ITI filed this case.

---

[8] ITI's First Amended Complaint alleges statements were made to employees of a nursing home in High Point, North Carolina.  This Court may take judicial notice of the fact that High Point is located within North Carolina's Middle District.

1.    **Declaratory-Judgment Jurisdiction Requires a Definite and Concrete Dispute Between the Parties**

For there to be jurisdiction in a declaratory-judgment action, there must be an "actual case or controversy" that is justiciable under Article III. *See* 21 U.S.C. § 2201; *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 778 (2007). Further, "[t]he declaratory judgment plaintiff carries the burden of proving 'the existence of facts underlying' his allegations of the existence of an actual controversy." *Indium Corp. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (citation omitted).

In discussing what a declaratory-judgment plaintiff must show to establish jurisdiction, the Court in *MedImmune* said that its "decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character.'" 127 S. Ct. at 771. Declaratory relief is not available where a party is seeking "an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citation omitted). Instead, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

2.    **ITI's Pre-Suit Phone Calls Made Under False Pretenses Did Not Create Declaratory-Judgment Jurisdiction**

To demonstrate the existence of a specific dispute between ITI and KCI,[9] ITI relies on the personal opinions of two KCI employees not involved in litigation decision-making, which were solicited over the phone under false pretenses and were equivocal in any event. The two KCI employees' oral statements do not establish the existence of a definite and concrete dispute for

---

[9] ITI's more general allegations regarding KCI's past litigation not involving ITI and KCI's statements in public filings regarding its intellectual property are discussed in section III.A.3. below.

three reasons:  first, neither Mr. Burke nor Mr. Girouard had authority to assert claims of patent infringement or initiate suit on KCI's behalf; second, a "yes" response by a patent holder when asked by a competitor if it will enforce its patents does not demonstrate the existence of a definite and concrete dispute between the parties; and third, the responsive statements ITI relies on do not prove that KCI had actually taken a position or engaged in an "affirmative act" with regard to infringement of any patent by ITI's product.

First, neither Mr. Burke nor Mr. Girouard had authority to assert claims or initiate suit on KCI's behalf.  Courts have consistently held that "unless an agent has actual or apparent authority to assert claims of patent infringement or to initiate suit on the patentee's behalf, the agent's statements are insufficient to create an actual controversy."  *See, e.g., Boler Co. v. Raydan Mfg., Inc.*, 415 F. Supp. 2d 896, 902 (N.D. Ill. 2006).  In characterizing Mr. Burke's and Mr. Girouard's expressions of opinion as "warnings" from KCI, ITI's complaint ignores the equivocations of both men, including Mr. Burke's repeated statements that he was "out of the loop" and could not speak for KCI on legal matters, as well as Mr. Girouard's statements that he did not know whether KCI would take any action regarding his product, that this would not be his determination in any event, and also that Mr. Tumey knew more about KCI's patents than he did.  *See supra* pages 4-5.  There is absolutely no evidence that either Mr. Burke or Mr. Girouard had actual or apparent authority to assert claims of patent infringement or initiate suit on KCI's behalf, and their declarations establish the opposite.  *Id.*

Second, this conclusion would not change even if Mr. Burke's and Mr. Girouard's statements could be fully attributed to KCI.  Courts have held that a "yes" response by a patent holder when asked by a competitor if it intends to enforce its patents is a "reflexive" answer that is expected and does not show an intent to sue. *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885,

888-89 (Fed. Cir. 1992);  *Merchandising Tech., Inc. v. Telefonix, Inc.*, No. 05-CV-1195-BR, 2007 WL 464710 (D. Or. Feb. 7, 2007).   During each conversation, it was Mr. Tumey who broached the topic of KCI's patent portfolio and Mr. Tumey's intention to sell a product that would compete with KCI's patented VAC.   Burke Decl. at ¶ 7; Girouard Decl. at ¶¶ 8-10. Before Mr. Tumey called them, neither Mr. Burke nor Mr. Girouard knew anything about ITI, or Mr. Tumey's involvement with ITI, or was even aware of the product Mr. Tumey wanted to discuss.  Burke Decl. at ¶ 11; Girouard Decl. at ¶ 11.  This is not surprising since ITI's product had not yet even been offered for sale when Mr. Tumey called Mr. Burke and Mr. Girouard out of the blue under the guise of friendship.  There can be no question that the responses provided to Mr. Tumey's request for "advice" were the type of "reflexive" responses that would be expected by any employee of a patent holder under similar circumstances.  As such, they provide no evidence of an intent to sue by KCI that would show the existence of a "concrete and definite dispute" between the parties.

Third, there is no declaratory-judgment jurisdiction where a patent holder has not communicated anything that would indicate it has *actually taken a position* with regard to a declaratory-judgment plaintiff's infringement of its patents.  *Baker Hughes Oilfield Operations, Inc. v. ReedHycalog UK, Ltd.*, No. 2:05-CV-931 TS, 2008 WL 345849, at **2-3 (D. Ut. Feb. 6, 2008); *id.* at *2 ("In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee.*") (quoting *SanDisk Corp. v. STMicroeletrocnics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) (emphasis added).  The equivocal statements of Mr. Burke and Mr. Girouard made *in response* to hypothetical questions

posed to them by Mr. Tumey cannot be construed as "affirmative acts" and provide no indication that KCI had at that time actually taken a position with regard to the infringement of KCI's patents by an ITI product that KCI had not even seen.

In fact, none of the Federal Circuit Court's post-*MedImmune* decisions stands for the proposition, or in any way supports ITI's extraordinary assertion, that declaratory-judgment jurisdiction can be based on an accused infringer's recollection of an oral conversation, instigated by him, in which he asked an employee of a patent holder to speculate as to what his employer might decide about potential infringement of unspecified patents by an unseen product. Instead, the Federal Circuit has found declaratory-judgment jurisdiction where the parties have had ongoing relationships and communications, both written and oral, that substantiate the existence of a concrete and definite dispute involving known products and defined patents. *See, e.g., Micron Tech. Inc. v. Mosaid Tech. Inc.*, No. 2007-1080, 2008 WL 540182, at *1 (Fed. Cir. Feb. 29, 2008) (patent holder sent "warning letters" to accused infringer); *Adenta GmbH v. OrthoArm, Inc.*, 510 F.3d 1364, 1366-67 (Fed. Cir. 2007) (parties had significant involvement with each other regarding the patents in question through meetings, discussions, royalty agreements, licensing issues, third-party patent assignments, and other communications); *Sony Elect., Inc., v. Guardian Media Tech., Ltd.*, 497 F.3d 1271, 1275 (Fed. Cir. 2007) (parties were embroiled in an out-of-court dispute over the patents that started more than *four years* prior to litigation); *SanDisk*, 480 F.3d at 1374-76 (parties had ongoing discussions, presentations, disagreements, meetings, telephone conversations, written communications, and covenants not-to-sue, for months prior to the filing of the declaratory action). In the present case, at the time ITI filed its declaratory judgment action, KCI had not initiated a single contact with ITI, sent a single written communication to ITI, sat in a single meeting with ITI representatives, seen or

inspected the Svedman System to compare it to the claims of its patents, or had any opportunity to discuss possible out-of-court resolution with ITI. Under these facts, there was no dispute between the parties at all, let alone the requisite "definite and concrete" dispute required for declaratory-judgment jurisdiction, and this case should be dismissed.

### 3.    The Existence of a Dispute Between ITI and KCI Is Not Shown by Either KCI's Suits Against Other Parties or KCI's General Statements About the Importance of Its Intellectual Property

The only other jurisdictional allegations in ITI's complaint relate to KCI's past litigation behavior and an SEC Form 10-K in which KCI stated (in a required section discussing "risk factors") that it considers its intellectual property an important part of its business. Neither provides any basis for finding declaratory-judgment jurisdiction in this case.

### a.    KCI's Lawsuits Against Other Parties

ITI alleges that its position that there is a dispute between it and KCI is supported by the fact that KCI has asserted its patents against *other* parties in the past. First Amended Complaint at ¶ 23. Specifically, ITI alleges that "KCI, Inc. has sued no fewer than ten different defendants in the past six years for alleged infringement of the patents in suit." *Id.* In reality, however, ITI's characterization of KCI as an aggressive litigant is hyperbole. Contrary to ITI's characterization, KCI has been involved in just a handful of patent disputes in the thirteen years it has marketed the VAC. *Id.* In particular, four of the six cases cited in support of ITI's statement involve just two groups of related companies (BlueSky Medical, Medela, and their parent and sibling companies). *Id.*

More importantly, as both a logical and a legal matter, KCI's prior suits against unrelated third parties do not establish a dispute between KCI and ITI. Apparently, ITI mentions KCI's past litigations in an attempt to portray KCI as an historically aggressive litigant, which ITI believes could provide some basis for ITI to fear that it could be next in line if it launched the

Svedman System.  But even if ITI's *apprehension* of suit (whether reasonable or not) had any

relevance at all after *MedImmune*, it is noteworthy that even pre-*MedImmune* cases gave little

weight to a patentee's past litigation behavior in considering whether declaratory-judgment

jurisdiction existed.  *See, e.g., West Interactive Corp. v. First Data Resources*, 972 F.2d 1295,

1298 (Fed. Cir. 1992) (stating that "First Data's litigation against unrelated third parties did not

give West an objective reason to fear litigation").  Indeed, the Seventh Circuit (in a case decided

before the Federal Circuit was founded), determined that even a prior litigation between the

patentee *and the declaratory-judgment plaintiff* "cannot be viewed as anything more than a

general indication that [the patentee] considers litigation a viable alternative once it has

determined that a competitor is producing a product which infringes the patent at issue here."

*Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1212 (7th Cir. 1980).

### b.  KCI's Statement in Its SEC Form 10-K That Its Intellectual Property Is Important

ITI also alleges that an actual dispute exists between it and KCI based on KCI's

statement in an SEC Form 10-K that "[i]f we are unsuccessful in protecting and maintaining our

intellectual property, particularly our rights under the Wake Forest patents, our competitive

position would be harmed."  First Amended Complaint at ¶ 24.  However, this statement—which

appears in a section of the Form 10-K discussing "risk factors" that is *required* by SEC

regulation (17 C.F.R. § 229.503(c))— neither mentions ITI nor any other particular competitor.

In fact, the only companies mentioned in the Form 10-K—BlueSky and Medela—appear in a

separate paragraph describing KCI's litigation with those companies.  *See* Burley Decl. at ¶ 8

and Ex. 4.

Even under the now-defunct "reasonable apprehension of suit" test, statements of this

kind were not considered adequately threatening to justify a declaratory-judgment action:

> A generalized statement to the public that one will protect its rights can hardly generate much surprise or alarm. It cannot reasonably create the same sense of apprehension as a statement directed to a particular party that is made immediately after the speaker has accused the other party with infringement.

*Eloica, S.A. v. General Elec. Co.*, No. 04-C-43-C, 2004 WL 1196870, at *5 (W.D. Wis. May 18, 2004).

The reason for this is obvious. A company saying that failing to protect its intellectual property would harm its competitive position amounts to no more than a truism, and hardly establishes a definite and concrete dispute between the company and all of its existing or possible competitors. *See Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 WL 2022024, at *9 (N.D. Cal. July 9, 2007) (granting defendant's motion to dismiss for lack of subject matter jurisdiction). In *Bridgelux*, the court specifically noted that "the fact that Cree [defendant] stated publicly in press releases or at industry meetings that it would publicly defend its patents is unremarkable. The same could be said of many patent-holders." *Id.*[10]

In sum, there was no definite and concrete dispute between ITI and KCI at the time suit was filed. Mr. Tumey's phone conversations with Mr. Burke and Mr. Girouard are insufficient to establish a dispute. Similarly, the existence of a dispute between ITI and KCI is not shown either by KCI's suits against *other* parties or by KCI's statement to the SEC in its Form 10-K that failing to protect its intellectual property would hurt its competitive position. Accordingly,

---

[10] Even where courts have considered a patent holder's past litigation or public statements, they have not based jurisdiction solely on such factors, but rather look at such evidence as *confirming* the existence of an actual controversy where there has been other conduct by the patent holder *specifically directed at the declaratory judgment plaintiff. See Micron*, 2008 WL 540182 at *3 (finding the existence of a justiciable controversy where the patentee sent warning letters to the accused infringer and filed suit one day after the accused infringer's declaratory judgment suit was filed). Here, in contrast, ITI asks the Court to find the existence of a concrete and definite dispute based on KCI's public statements and unrelated litigation in the absence of any conduct by KCI specifically directed at ITI.

the Court lacked jurisdiction over ITI's complaint at the time it was filed and this suit should therefore be dismissed.

### 4.     Events Subsequent to the Filing of the Original Complaint Cannot Create Jurisdiction

Neither KCI's post-suit inspection of ITI's product, nor the lawsuits filed by KCI subsequent to that inspection, establish the existence of a justiciable controversy at the time ITI filed this Delaware suit. Jurisdiction must exist at the time of filing, and "[e]vents that transpired after filing cannot operate to create jurisdiction at the time of filing." *Baker Hughes*, 2008 WL 345849, at *3 (dismissing declaratory judgment suit filed in Utah for lack of jurisdiction notwithstanding fact that patent holder filed subsequent infringement action in Texas). In *Baker Hughes*, the court recognized that developments between the filing of a potential infringer's declaratory judgment suit and the filing of a patent holder's subsequent infringement suit may well give rise to jurisdiction, but those events are not appropriately considered when evaluating whether an actual controversy existed on the date the declaratory judgment suit was filed. *Id.* Further, ITI's attempts to add new causes of action in its First Amended Complaint cannot retroactively vest this Court with jurisdiction relating back to the date of the original complaint. *See Schering Corp. v. Amgen, Inc.*, 969 F. Supp. 258, 267 n.4 (D. Del. 1997) (citing *Pressroom Unions-Printers League Income Security Fund v. Continental Assur. Co.*, 700 F.2d 889 (2nd Cir. 1983) (plaintiff may not retroactively vest the court with jurisdiction by amending complaint)).

In its First Amended Complaint, ITI claims that KCI's inspection of ITI's product on December 4, 2007 and its subsequent filing of two lawsuits against ITI demonstrate the existence of jurisdiction. In fact, the opposite is true. KCI's request to inspect ITI's product confirms that KCI lacked sufficient information prior to such inspection to take a position with regard to ITI's infringement of its patents. The four- and five-week passage of time after such inspection before

KCI filed state court and infringement claims, respectively, further demonstrates that litigation was not imminent when ITI preemptively (and prematurely) filed this action. Indeed, if KCI had filed its lawsuits without having first inspected ITI's product and taken the time to thoroughly investigate such claims, ITI undoubtedly instead would have complained that KCI lacked a good faith basis for the filing of such suits.

### B.     Even If This Court Were to Find Jurisdiction, the Court Should Exercise Its Discretion and Decline to Hear the Case

Even if the Court were to conclude that ITI's allegations are sufficient to meet the "actual controversy" requirement for declaratory-judgment jurisdiction, the Court should exercise its discretion to decline to hear ITI's case. In *MedImmune*, the Supreme Court said that the Declaratory Judgment Act gives district courts "unique and substantial discretion in deciding whether to declare the rights of the litigants." 127 S. Ct. at 776 (quoting *Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 286 (1995)). This has been the long-stated position of the Federal Circuit. *See, e.g., Micron*, 2008 WL 540182, at **4-5; *Sony*, 497 F.3d at 1289 (Fed. Cir. 2007); *EMC Corp.* v. *Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996). In *EMC*, for example, the Federal Circuit said that even if the "actual controversy" requirement for declaratory-judgment jurisdiction is met, that "does not mean that the district court is required to exercise that jurisdiction." *EMC*, 89 F.3d at 813. Rather, the court need only "act[] in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration" in reaching its decision. *Id.* at 813-14. Similarly, in *Sony*, although the Federal Circuit said *MedImmune* required reversal of the district court's finding that it lacked jurisdiction, the case was remanded so the district court could reconsider whether to exercise its discretion to dismiss the case. *Sony*, 497 F.3d at 1289. Further, the Federal Circuit said the district court, on remand, was "free to

consider whether entertaining the cases would be consistent with both the purposes of the Declaratory Judgment Act and principles of wise judicial administration." *Id.*

Where, as here, the declaratory-judgment plaintiff has engaged in gamesmanship, jurisdiction should be declined as inconsistent with the purposes of the Declaratory Judgment Act. In *EMC*, for example, the Federal Circuit affirmed the district court's decision to decline to entertain a declaratory-judgment action of invalidity and noninfringement where it concluded that the declaratory-judgment plaintiff had filed suit during licensing negotiations as a tactical measure to improve its negotiation position. *EMC*, 89 F.3d at 815. As the Federal Circuit found, filing suit to gain a tactical advantage in this way is "not a purpose the Declaratory Judgment Act was designed to serve." *Id.  See also Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039-40 (Fed. Cir. 1995) (finding no abuse of discretion when district court declined to hear first-filed declaratory-judgment action in favor of patentee's infringement suit filed three days later, where court found that declaratory-judgment action was "intended to preempt" patentee's suit and convenience of witnesses and location of evidence favored second-filed forum). Likewise, this Court should use its discretion to dismiss this suit in light of ITI's gamesmanship in attempting to manufacture jurisdiction by placing phone calls under false pretenses. If potential infringers are allowed to freely use the tactics ITI used here to manufacture declaratory-judgment jurisdiction by simply calling up an acquaintance employed by the patent holder and inquiring whether that person thinks the patent holder might enforce its patents under a hypothetical set of facts, the "actual controversy" requirement of the Declaratory Judgment Act will become meaningless.

This Court should also exercise its discretion to dismiss this matter because the Middle District of North Carolina is a more suitable and convenient forum for the resolution of the issues

raised in this case. In its *Micron* opinion issued February 29, 2008, the Federal Circuit directed

district courts to analyze the convenience and suitability of competing forums under 28 U.S.C.

§ 1404(a) rather than apply categorical rules such as the first-filed suit rule when faced with a

jurisdictional decision about a declaratory judgment action where an infringement action has

been filed in another forum. 2008 WL 540182, at *6. The court said that the section 1404(a)

convenience factors take on additional significance in light of the post-*MedImmune* "newly

understood legal environment surrounding declaratory judgment jurisdiction in patent cases"

where potential litigants have a greater ability to race to the courthouse to seek a forum more

amenable to their legal interests. *Id.* In other words, the court explained, "when the

discretionary determination is presented after the filing of an infringement action, the jurisdiction

question is basically the same as a transfer action under § 1404(a)." *Id.*

Here, the section 1404(a) convenience factors weigh heavily in favor of the Middle

District of North Carolina, where an infringement suit between the parties is currently pending.[11]

The record before the Court shows that the claims at issue arose in the Middle District of North

Carolina. The technological advancements recognized in the '643, '081, and '651 patents were

each made by researchers working on behalf of Wake Forest in Winston-Salem, North Carolina,

---

[11] The public interest factors the Court should consider include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the public policies of the fora." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3rd Cir. 1995); *Brown ex rel. FoxMeyer Drug Co. v. C.D. Smith Drug Co.,* No. 98-494-SLR, 1999 WL 709992, (D. Del. Aug. 18, 1999). The private interest factors include: "1) plaintiffs' forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.*

which is located within Middle District of North Carolina. *See APV North Am., Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 399 (D. Del. 2002) (transferring patent infringement action on convenience grounds to district in which a party's facilities were located and where the party conducted business); *see also Weisler v. Barrows*, No. 06-362, 2006 WL 3201882, at *3 (D. Del. Nov. 6, 2006).   Also, the only facility identified in ITI's complaint where the Svedman System has actually been used is located in North Carolina's Middle District. First Amended Complaint ¶ 34.

The Middle District of North Carolina is a more convenient venue for resolution of this matter because the persons with relevant knowledge of the development of the '643, '081, and '651 patents are located at Wake Forest in the Middle District.   Additionally, the documents and tangible evidence located at Wake Forest are more readily accessible to the North Carolina court. *See Omnicom Group, Inc. v. Employers Reinsurance Corp.*, No. 01-839-GMS, 2002 WL 109346, at **2-3 (D. Del. Jan. 28, 2002) (transferring case, on convenience grounds, to venue in which parties' principal places of business and witnesses were located); *Alloc, Inc. v. Unilin Decor NV*, No. 03-253-GMS, 2006 WL 3050815, at *3 (D. Del. Oct. 26, 2006) (same). Witnesses and documents related to ITI's newly added false advertising claim are also located in the Middle District of North Carolina.

This matter would be resolved more expeditiously and with less expense in the Middle District of North Carolina.   None of the parties to this case has a principal place of business—or any significant business presence at all—in the District of Delaware.   None of the patents at issue in this matter was developed in this district, and none of the parties' claims arose in Delaware. There are also no known witnesses residing in the district.   On the contrary, as described above,

the bulk of the evidence necessary to prosecute this matter is located in North Carolina, as are a number of witnesses.

In the present case, *the only connection* between either ITI or KCI and Delaware is the fact that ITI and two of the KCI defendants were incorporated under Delaware law.[12]  But the fact that Delaware is the state in which the parties were incorporated is not dispositive.  For venue purposes, "[w]hen an alternative forum is more convenient and has more substantial connections with the litigation 'incorporation in Delaware will not prevent transfer.'"  *APV North America, Inc.*, 295 F. Supp. 2d at 398-99.

In sum, because the convenience factors under section 1404(a) strongly favor venue in North Carolina, the Court should exercise its discretion under the Declaratory Judgment Act to dismiss this case, allowing the parties to pursue their claims within the pending North Carolina litigation.

**C.    In the Alternative, This Court Should Transfer Venue of This Suit to the Middle District of North Carolina Pursuant to 28 U.S.C. § 1404(a)**

In the alternative, KCI moves to transfer this case to North Carolina under 28 U.S.C. § 1404(a) because it would be more convenient for the parties and witnesses and serve the interest of justice to do so, for all the reasons just discussed supra.  *See* 28 U.S.C. § 1404(a); *Bosco v. Scott*, No. 00-211-GMS, 2000 WL 1728150, at *1 (D. Del. Aug. 31, 2000).  ITI will no doubt attempt to invoke the first-to-file rule in opposing this motion to transfer, but that rule is inapplicable here.

---

[12] Defendants KCI Licensing, Inc. and KCI USA, Inc. were incorporated under Delaware law, but their parent company, Defendant Kinetic Concepts, Inc. is a Texas corporation.  First Amended Complaint ¶¶ 2-4.

The first-to-file rule is "grounded on equitable principles" and "not a rigid or inflexible rule to be mechanically applied." *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 976-77 (3rd Cir. 1988); *see also Micron*, 2008 WL 540182, at \*6 (recognizing that the first-filed suit rule will not always yield the most convenient and suitable forum). Accordingly, courts recognize a host of exceptions whereby a prior filed matter may, nonetheless, properly be transferred to the venue of a subsequently filed case. Such exceptions are granted, and prior-filed litigation should be transferred, where the plaintiff has acted in bad faith, participated in forum shopping, or launched anticipatory litigation. *EEOC*, 850 F.2d at 976-77. Each of these exceptions is applicable here.

ITI's Delaware suit constitutes forum shopping, and its illegitimate choice of venue should not be entitled to any deference. This Court has previously found a plaintiff culpable of forum shopping by filing suit here when Delaware bears, at best, a tangential relationship to the facts at the heart of the suit. In *Integral Resources Ltd. v. Istil Group, Inc.*, No. 03-904, 2004 WL 2758672 (D. Del. Dec. 2, 2004), the plaintiff filed suit against a Ukrainian corporation in Delaware and justified the venue solely upon the defendant's Delaware incorporation. Evaluating the defendant's motion to dismiss, this Court noted the defendant's "only alleged connection to the state is that Delaware is its place of incorporation." *Id.* at \*5. The Court concluded that the choice of venue "suggests that [plaintiff] is forum shopping." *Id.* Because ITI's choice of venue is based solely upon KCI's Delaware incorporation, the same observation can be made in this case regarding ITI.

There can also be no doubt that the pending matter constitutes anticipatory litigation. ITI's conduct demonstrates that it attempted to manufacture a controversy between the parties in order to ambush KCI with this lawsuit before KCI even had the opportunity to see ITI's product.

Such conduct, if left unchecked, promotes gamesmanship and procedural trickery, which damages the efficiency of our judicial system and hinders justice. This Court should not condone or reward ITI's conduct, but instead should hold that it eliminates any procedural deference that might otherwise be afforded to ITI. For all these reasons, KCI's alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be granted.

**D.     In the Further Alternative, the Court Should Dismiss or Stay ITI's Newly Added Declaratory Judgment Count That Mirrors KCI's Pending Texas Suit**

If the Court determines that it should retain jurisdiction over this matter, the Court should dismiss or stay Count XII of ITI's First Amended Complaint, in which ITI requests a declaratory judgment regarding its ownership of the Svedman System. This exact same issue—ownership of the Svedman System—was raised by KCI in a state court lawsuit filed in Texas more than three weeks before ITI filed its First Amended Complaint adding this claim in the Delaware suit. *Compare* KCI's Original Petition (First Amended Complaint Ex. F) ¶¶ 67-71 (Count 8: Request for Declaratory Judgment) *with* First Amended Complaint ¶¶ 104-106 (Count XII: Declaratory Judgment of Ownership of the Svedman System).

Courts have consistently found that dismissal is proper when parties seek relief under the Declaratory Judgment Act for purposes of "procedural fencing" or "to provide an arena for a race for res judicata." *See Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (noting that whether "the declaratory remedy is being used merely for the purpose of 'procedural fencing'" or "to provide an arena for a race for res judicata" should be considered by the court when determining whether to exercise discretion.); *Apotex Inc. v. Sanofi-Synthelabo*, 386 F. Supp. 2d 549, 551 (S.D. N.Y. 2005) (same). *See also EMC Corp.*, 89 F.3d at 815 (explaining that the Act Decl. Judgment should not be used as a "tactical measure.")

In granting a motion to dismiss a declaratory-judgment action in a patent dispute, the court in *Staley Elevator Co. v. Otis Elevator Co.*, 35 F. Supp. 778 (D. N.J. 1940), explained that the Declaratory Judgment Action was not intended to provide jurisdiction simply to allow a party its choice of forum:

> It was never intended that the relief to be obtained under the Declaratory Judgment Act be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases. The object of the statute is to afford a new form of relief where needed, not furnish a new choice of tribunals.

*Id.* at 780. Thus courts have recognized that they should "be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed...regardless of whether the preexisting action was filed in state or federal court." *Apotex Inc.*, 386 F. Supp. at 551. Moreover, it has been held that the Declaratory Judgment Act should not be used "to secure a judgment which would impinge on a state proceeding and which might result in a conflict between the decisions of state and federal courts." *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 544 (3rd Cir. 1974); *see also Wilton*, 515 U.S. at 282.

Here, KCI brought suit in Texas state court to enforce confidentiality agreements signed by three of its former employees now working for ITI, and to seek relief for the misappropriation of KCI's trade secrets learned by the former employees during the course of their employment at KCI in Texas. The confidentiality agreements are governed by Texas law and performable in Texas. ITI, however, asks this Court to exercise declaratory-judgment jurisdiction because one of the three employees—Mr. Tumey—also signed a "Management Equity Agreement" (pertaining to stock options KCI offered Mr. Tumey) which states it is subject to Delaware law, and which ITI claims supersedes Mr. Tumey's Confidentiality Agreement. But Mr. Tumey is not even a party to the suit before this Court, and there is no reason the Texas court cannot reconcile the relevant agreements that have already been brought before it. This Court should

reject ITI's invitation to interfere in the ongoing Texas litigation and dismiss, or at least stay, Count XII of ITI's First Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant KCI's motion and dismiss ITI's complaint for lack of subject matter jurisdiction.  If jurisdiction exists, the Court should decline to exercise it. In the alternative, the Court should transfer venue of this matter to the Middle District of North Carolina.  In the further alternative, this Court should dismiss or stay ITI's newly added declaratory judgment count seeking adjudication of issues already before a Texas court.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Donald R. Dunner
Don O. Burley
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC  20001
202-408-4000

Erik R. Puknys
Jason M. Webster
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA  94304
650-849-6600

R. Laurence Macon
Karen Kroesche Gulde
AKIN GUMP STRAUSS HAUER
   & FELD LLP
300 Convent Street, Suite 1500
San Antonio, TX  78205
210-281-7000


Dated: March 12, 2008
00201743.v1